Shippen, C. J.
delivered the court’s charge, after stating minutely the evidence.
There can be no question but that an inferior officer may be guilty of such misconduct as may justify the captain in discharging him in a foreign port. But it ought to be in a clear case, and on good grounds. For the reasons urged by the plaintiff’s counsel, absolute necessity almost is required to justify the measure. Three grounds are all edged here, but of the threats to leave the ship or of mutinous behaviour, we have no proof except from captain Coates. It is very extraordinary that he did not complain of this at the time to the other persons on board, and he is certainly interested in defending his own conduct ; yet it must be acknowledged, that he is corroborated in his present account, by the letter he wrote to the plaintiff from Canton, assigning the reasons of his dismission. These circumstances will have their proper weight with the jury. As to the alledged intoxication, if we adopt the account of the supercargoes, that he was twice or oftener in liquor, it does not prove that he was frequently drunk. 'Once indeed in the Straits of Sunda he was most unjustifiably drunk, and unfit for duty during his watch; but after the captain had granted him his pardon for this misconduct, he ought not to have remembered it, except on some new offence. We hear of no other instance but this when he was disabled from doing his duty, and the habits of maritime life will not warrant us in laying down too strict a rule of morals, as applicable to seafaring men during a voyage of one half of the year.
If the jury shall be of opinion that the discharge at Canton was not justified by the circumstances of the case, they will consider that the 500 dollars was payable there by the supercargoes, from the nature of the contract, in lieu of the three tons privilege. This privilege he surrendered to them upon the terms of the contract, though he made no formal demand of the money. If he had received this sum and invested it in goods, which he had shipped in the Ariel uninsured, he would have lost the whole on her capture. But he might legally have insured such goods purchased with money then earned, and it appears by the *authorities cited, that there is a solid distinction between *451] such a case and another where the wages were contingent, and depended on the full completion of the voyage. Though he might also have insured the reasonable profits on such goods, yet the measure not being very common, it is not probable it would have been pursued by a seafaring man ; and it does not seem reasonable that the plaintiff should, as matters have turned out, be placed in so much better situation than all the other officers and mariners on board, against whom there has been no charge or insinuation of misconduct.
The plaintiff is not entitled to wages on the return voyage from China to Philadelphia. Where a vessel has been captured, the wages of the seamen are lost from the last port of delivery, *451 and so has the law been held ever since the case in 1 Ld. Raym. 739.
Messrs. Ingersoll and Porter, pro quer.
Messrs. Rawle and Franklin, pro def.
So that upon the whole, if the captain unduly dismissed his chief mate, the wages in the voyage to Canton and for half the time of the Ariel’s continuance there, together with the 500 dollars, seem justly due to the plaintiff, after deducting the monies he has received. Interest is generally allowed on contracts at least from the commencement of the suit, but circumstances may alter the rule, of which the jury are the proper judges.
Verdict, pro quer. for 399r7oo dollars.